Good morning. I may please the court. My name is Quentin Byrd and I represent the appellant, Wendell Tabb, in this matter. Although I'll say at the onset that this appeal stems from both a partial grant of defendants motion to dismiss as well as a summary judgment order, my argument will primarily focus on the order grant and summary judgment. The district court, in our opinion, erred in three distinct manners. First, the district court erred in determining that Mr. Tabb was not subject to an adverse employment action. Second, the district court erred in determining that Planktoth lacked adequate comparators. And third, the district court erred in concluding that Planktoth was not treated less favorably than his comparators. In order to show, as this court has laid out in the case of Garner v. City and County of Chesterfield, Mr. Tabb was required to show that he was a member of a protected class, he had satisfactory job performance, and he was required to identify an adverse employment action in that similarly situated, that'd be the comparator language, similarly situated individuals outside the protected class were treated more favorably than he was. As to the issue of adverse employment action, first of all, although most of the appeal and the trial court's discussion stems around the issue of the technical assistance that Mr. Tabb was not provided by, I will note that it was raised in the complaint, there was a discussion about the additional hours that Mr. Tabb was required to work, which this court has slightly addressed in the case of Boone v. Golden in 1999, discussing whether or not an additional burden or disproportionate assessment assignment of workloads can constitute adverse action. And I'll say for the record, we still contend that it does. But the primary issue in this case is the failure for the county to hire Mr. Tabb or provide technical assistance, which one could come in the form of an actual hire of a teacher, but there are also other methods by which the DPS could have provided Mr. Tabb the necessary support, that being a contractor classified position that's converted or a contractor like Mr. Will, I forget his name now, was hired in many years by DPS to provide that very support. So the rule is established in Hishon in the Supreme Court is that a benefit that's part and parcel of an employment relationship may not be doled out in discriminatory fashion even if the employer would be free under the employment contract simply not to provide the benefit at all. And so I think key in this case is defining part and parcel, which I think this Court even in its discussion in Garner, it's not well fleshed out in case law. And so this is my submission to the Court. In determining what's part and parcel in this context, I would submit to the Court that a benefit may be considered part and parcel of employment if it's central to the employment relationship so that in its absence, its absence materially changes the terms of employment and substantially impairs the employee's ability to perform his job. So in this case, I submit that the failure to hire a technical theater director or provide technical support does affect a privilege of employment and is part and parcel as defined by the Supreme Court's case in Hishon. For example, it's undisputed in the record that every director in Durham Public Schools was required to put on production. This is not the compensation that Mr. Tabb received for class time. This is work done after class hours. It was expected and it was actually part of Mr. Tabb's evaluation he was required to put on these productions. And the failure, the work performed by the theater tech directly impacted Mr. Tabb's performance and it was a prerequisite to a successful production. And I would contend it was inextricably tied to the director, Mr. Tabb's ability to perform his job duties. So that in its absence, Mr. Tabb was compelled to perform the additional work. And I would akin it to, Your Honors, the example I would submit to the court is that if we were to consider the hiring of law clerks for judges, while it's true that it's the judge that offers the opinion and they can do the work themselves, however it's not reasonable, especially in the current climate, to have a federal judge do the work on their own and not have the support of a law clerk. In that way, I would say that having a law clerk would be kind of part and parcel to a judge's job. Can I ask a question about this? And I confess I'm not a theater guy. But if I'm the theater director and I agree to put on performances, but the amount of work that I put into those performances, I'm not a theater director. I'm a football coach. And my job is to coach the team. And so that has certain requirements. But, you know, I spend all day every Sunday reviewing film so that I can develop a better game plan. But that's not a required part of my job. It makes me better at my job. And I choose to do that because I want to give back to the kids and all great laudable goals. But then I go and I say, well, I want you to relieve me of this extra work that I'm taking on. Right? So, yes, he has to put on performances. But does he have to have sets for each of them? Lots of plays are put on with no sets. Right? Does he have to do lighting in a professional manner? Well, I'm sure it's better in the same way that, you know, a football coach watching film would be better. But is that really, like, the part of his job that he's required to do? It seems like to me, to his great credit, he's going above and beyond what is required of him, but then also complaining that I'm having to go above and beyond when that's his choice. Help me understand why that's not the way to think about your client's situation. Thank you, Judge Richardson. I would say that the evidence does not support the idea that this is Mr. Tapp going above and beyond. As I stated, that all the production, all the again, kind of going back to the federal judge comparison, it wasn't until I think 1936 that federal judges had clerks. So, yes, the job could be done, and Mr. Tapp, in fact, did do the job without the assistance, but that work was necessary to him performing his job duty. And to say that Mr. Tapp, as a black male, was not required to, you know, his productions should not have sound. His productions should not have lighting. And that to do what has become normative, especially in today's society, if this was 100 years ago, the answer may be different. But in today's society, all the plays have sound, they have lighting, they have sets, they have things of that nature. And so, I would say it's different. Would you, based on this, I mean, I just read this record, and maybe this is like not totally relevant, so I'll stop after this question, because I'm not sure it's actually relevant to the legal issue. But I read this as Mr. Tapp was a teacher who went above and beyond. He was not a guy who was doing only what was required of him, right? And that's why he was a successful teacher, and that's why, it at least appears from the record, he was doing quite well. But that's because he was doing more than he was required to. Should I not read the record that way? I should read the record, it seems like you're suggesting that he was doing what was required of him and nothing more. No, I would agree with you that he went above and beyond, but that's not the basis of the So, let's say, for example, go back to your football example, and this might not be a direct comparison, but, you know, the coach is required to show up for practice. The film in that, you know, instance in your example, that might be extra, but, you know, looking at additional film, but showing up for practices. And so, yes, Mr. Tapp did go above and beyond, but those things that he did above and beyond are not the basis of the lawsuit, because again, it was not only Mr. Tapp, it was Ms. Keystrong, every director in the county had to perform, had to produce this level of work, and it wasn't a matter of quality. I'm saying our condition is that the base level work that Mr. Tapp performed was necessary in part and parcel. And that was not, the minimum standard was not given to him in equal manner. Now, I agree with the Court's contention that anything above and beyond was outside norms would not be compensable, that it would not be subject to federal cuts. Why is it, and again, I said I was going to stop, and I don't follow my own advice, but why is the norm the right question, as opposed to what was required of his job, right? So, he was required to put on performances, but the quality of those was not directed. So, it may well be that theater directors, as a general matter, are devoted to their job. And so, if everybody is going above and beyond, which is probably true in most high school settings, theater teachers and football coaches are probably both going above and beyond. Why do we look at the norm, why does the mean matter, as opposed to what is required for that position? Well, first, my first part of the answer would be that we're going to a benefit, not just what Mr. Tapp did in the work that he performed. The benefit that was provided to other non-white comparators in the school system was that they had a tech. And so, if that's a benefit that's provided, Hishon demands that it must be doled out in a non-discriminatory fashion. And so, it's the benefit additionally provided by DPS that subjects this to Title VII scrutiny. And it's a different job. So, my analogy would be, if I worked at a fast food restaurant, and I was a cook, and every time I worked, I had to cook and to run the register. Those are two different job functions. They work together to make the whole thing work, but they're two different functions. In this case, Mr. Tapp was required to both cook and run the register. So, it's not above and beyond in a sense because this was a different job duty, usually done by different people when the director is not a minority. Let me ask you on a little bit different subject, if I understand correctly. The school board generally allocates a number of teachers to the schools based on the student population. It's not a perfect ratio, but they have a ratio, and they deviate from that ratio sometimes. And in connection with the Hillside School, actually, it was allocated more teachers per student than other schools in its district. It might have had the highest rate. As I understand it, then, the principal of the school then takes that number of teachers and assigns them to particular tasks within the school that the school is providing to the public. And in the case of the Hillside School, they were fortunate to have Mr. Tapp, of course, do what he was doing. But they also had two additional programs that required additional teacher support. One was the program for the underachieving students, and they needed to staff that. And then they had a program on the international baccalaureate program, which they had to staff. The principal was very sympathetic to Mr. Tapp and actually did want to help him out and get him an assistant, and made that request several times, didn't he? Correct. So really what we're talking about is challenging the school board's decision to allocate students to a particular school. And you're requesting the school board provide yet more teachers to the Hillside School, even though they have already provided more than other schools on the ratio they look at, the student ratio. Doesn't it come down to that? I'm glad you raised that, Judge Nehemiah. I disagree with the couching of the, framing of the issue by the district court because the comparator is on an individual . . . Basically, your claim is that somebody should have provided Mr. Tapp with an assistant. And my question focuses on where are we going to get this assistant? And your argument is the school board should have allocated some more teachers. They don't allocate particular jobs. They allocate a number of teachers, and the principal then does the assigning of the teachers to particular courses and tasks. So there's two ways that could have been done. One, your Honor is correct, in that the providing of an additional allotment is one way. And then the other way is that the principal's request to use the current allotments were obviated by the school board, directing them on how to use their allotments. And the reason I believe that it's permissible to discuss the necessity for the school board to allow the additional funds, like the school improvement grant that was federal funds that could have been used, is that we're talking about means versus anything else. So DPS did have the ability, but disagreed with the means. It wasn't a matter of did they have enough funds. DPS said, we have enough funds, but we don't choose to go and use it this way. So there was issues on the classified position, a contractor like Ms. Holly, Mr. Holly, and also evidence that the school improvement grant was denied, or Mr. Lassner's request that the photography, current photography position that was going, the photography teacher that was retiring, that that be used to support this position. And it was the school board that made that decision. So I believe, and I see that my time is up, that the additional allotment would be permissible because that's just saying the means by which Mr. Tabb would be made whole. But not, I don't think as a matter of law, it precludes his recourse because the specific means by which it would be provided to him. All right, thank you. You have some rebuttals. We'll hear from you again. Mr. Scheib. May it please the Court, Colin Scheib from the law firm of Darrington Smith, and I'm with the Durham Public Schools Board of Education. The board acknowledges and appreciates Mr. Tabb's role in the school system at large. The board also, however, maintains that Mr. Tabb has been treated equally, in some cases better, than his similarly situated colleagues. Mr. Tabb's main claim is that for years, Hillside High School did not hire an additional technical theater teacher, and that this was due to his race. Mr. Tabb's claim is unsupported by the facts and law. Jumping straight to the issue of the part and parcel analysis under Hisham. The first point I'd like to make is that in appellate's opening brief, this issue was not raised. There was a clear dispositive holding in the district court below with respect to the adverse action, and that was not at all addressed in the appellate's opening brief. Under well-established law of this court, that issue is therefore waived. What is the issue? It's waived? Right. The issue of part and parcel analysis, whether or not the assignment of a technical theater teacher to individual teachers, such as Mr. Tabb, is an adverse employment action. That was not at all addressed in appellate's opening brief. Well, he, he characterizes it a little differently. He basically said he's required to do more work, by reason of his position, than other people in a similar circumstance. Yes, Your Honor, and I think that goes to Judge Richardson's point. Mr. Tabb, like many teachers in the school system, they go above and beyond for their students. That's what teachers do. They go theater teachers and football coaches. I think the analogy to the football coaches is a good one. In thinking about that comparison, my initial thought is that Mr. Tabb has been asking for, you know, an assistant coach to help him coach the team. That's not even really the correct analogy, because a technical theater teacher does not assist Mr. Tabb teach. It's a different teacher assigned to the school to teach a different class of students. It would really be like a football coach looking at a stadium on Friday nights and saying that our facility is not up to par. We don't have, you know, proper lights for our game, that the, that the stands are not clean, that the, you know, that the lines of the field have not been properly painted. Because I want to go above and beyond for my students and for the school, I want to make this, the stadium and this field look better so they can draw bigger crowds and have, you know, a better game. Mr. Tabb has chosen to do the analogous version of that with respect to his theatrical productions. His extra effort that he's put on to produce high quality plays, the district court noted is laudable, but it cannot serve as the basis for a discrimination lawsuit. Can I ask you about the smallest claim, if you will, here, the technical supplement claim, which the district court dismissed as, I think it dismissed it on a motion to dismiss, is that right? Yes, Your Honor. And the, as I read it, he alleges that as a result of his failure to provide him with a technical director, he was required to do the job of two teachers because this extra work was necessary to stage high quality theater production. Now, I think the rejoinder that we suggested in our questions is, well, you don't have to do, all you have to do is do the job. You don't have to produce high quality. But I think there's enough in this record that suggests there's a lot of competition between these high schools. And the school got a lot of awards. And maybe that was part of it. Now, just on a motion to dismiss, you understand that there is enough evidence or allegations in the record that that was a part of his job and a requirement, if you will. He says that he's required to do technical work to fulfill his own duties. He failed and it was necessary to stage high quality theater productions. Do you dispute that, that he alleges that? I do not dispute that he alleges that, Your Honor. And that claim goes on the motion to dismiss. Yes, Your Honor. In part, the district court's opinion was also based on the failure of the plaintiff to allege that any theater director in the district had ever received two supplements. Well, the problem was that other theater directors had the assistant. But only— So, if that's the case, and if we reject the claim, or maybe for the reasons suggested by Judge Niemeyer, that he gets an assistant, then a lesser included equivalent would be extra money. I think that argument is undercut by the fact that at the time that Mr. Tadd filed his claim, only two of the six high schools in the district with active theater programs had technical theater directors. Was one of them the Durham School of the Arts? Yes, Your Honor. Which he says is a comparator. Now, the district court doesn't get to whether it's a comparator until it goes to summary judgment. But at summary judgment, it finds it's not a comparator with respect to the remaining claims. But we could take that as its reasoning, if it could reach the question, with respect to this very small claim. And what he said was that he was not swayed by the plaintiff's contrary allegations when he— that the Durham School for the Arts had. Now, how can that be a valid comparison? So, Your Honor, that was actually at the motion to dismiss stage, when the district court dismissed DSA as a comparator. Notwithstanding that— All right. Better yet. But how can that be a valid comparator? We'd argue DSA is not a valid comparator for the obvious alternative explanation. How can that be an explanation? You look at the website, and you say what you allege about yourselves. You know, I allege on my website that I am the most fantastic federal judge in the world, right? And then we look at some other— That's true. Yeah, right. We look at some other federal judge, like Judge Posner. He doesn't allege that on his website, so I'm the most— You know, that's just crazy to say that's a basis. Well, Your Honor, and I know that Appellant has taken issue with the citation to the website, but even putting that aside, plaintiff's amended complaint itself alleged that DSA is a magnet school for the arts. So that citation— Yeah, but that doesn't mean that it has a program that is superior to this one. It doesn't. I don't think that it necessarily needs to be a program that's superior. I think it provides an obvious alternative explanation for why there's additional arts staffing at DSA. It was used as a comparator by the district court. And the district court said that the reason it wasn't a fair comparator, that this comparator—he said it was a comparator. The district court said that's no good because the Durham School of the Arts says on its website all these great things about itself. Right, and— That can't be a correct rationale. And I would submit that even setting aside the citation to the website, the amended complaint itself alleges that Durham School of the Arts is a magnet school for the arts. And also, even assuming that there was error at the motion-to-dismiss stage with respect to DSA, plaintiff was nonetheless allowed full discovery with respect to DSA as a comparator. There were documents submitted, personnel files of DSA teachers were submitted to plaintiff. Interrogatories were answered about DSA staffing and the history of staffing at DSA. Deposition testimony went to the history of DSA and its status as a magnet school. There's a voluminous record with respect to DSA and its magnet program. So was there—you tell me that the district court's determination on this small issue, I'm not just talking about the money, I'm not talking about the extra teacher, that there was another determination by the district court on the basis of that evidence? I believe I'm saying— About a comparator for the money claim? Even if the district court had erred in dismissing the technical supplement claim at the motion-to-dismiss stage or dismissing DSA as a comparator at the motion-to-dismiss stage, that error would be harmless error because there was full discovery on those issues and all those facts before the district court at the summary judgment stage. Maybe I'm not following. I want to make sure I understand from your perspective. With respect to the second supplement, so like getting two supplements, like the Durham School of the Arts, nobody got two supplements there. Correct. And so why would the Durham School of the Arts be a comparator on this narrow question of whether he can get a second supplement or not? I don't think there is any valid comparator for the technical supplement claim. How many additional helpers did the person have? In other words, it had people rather than additional supplements, right? I'm just reading the record. Each teacher at Durham School of the Arts is assigned to teach individual classes of students. It's not like teacher assistants in a class with another teacher helping them to do their job. So a technical theater teacher at Durham School of the Arts is not hired to help a theater teacher. They're hired to instruct students. Okay, but there are additional technical theater teachers. Yes, Your Honor. More than one. But that issue was reserved for summary judgment, wasn't it? It was considered by the court at the summary judgment stage. But I'm not directing at that. My questions aren't about that. But that is certainly, I would think, better than a little extra money. So when you're asked, was there an additional supplement, no. But you have to say, no, there wasn't. But there were other bodies available to help him at the Durham School of the Arts. Durham School of the Arts is a larger arts program because it's an art and arts. No, I want to go back to the point because I'm curious about this point. Because why are those like a comparable discussion, right? So if one school says that, you know, we're going to hire a bunch of teachers in this particular area and the other school does not, why does that go to, why is that a comparator to getting two supplements, right? Maybe it's wrong at the motion to dismiss. But the point is, at least at summary judgment, you know, the Durham School system says nobody gets two supplements. That's just the way we do it. Like you don't get two supplements. And so why would, there's nobody at the Durham School of the Arts that's getting two supplements. I mean, he's got to point to someone who's similarly situated who's getting what he's not, right? And there is nobody who is similarly situated or not that's getting a second supplement in the Durham system. That's correct. Theater or not, right? Like that's coaches, band directors, anybody. That's correct, Your Honor. At the time that he filed his complaint, there were four other theater directors in the district that were in a similar situation as him that is not having any technical theater staff at their school. No, we're not talking about staff. We're talking about supplement. I think the dialogue here is focusing on the narrow issue of dismissing the supplement aspect. Yes, Your Honor. It's my understanding that the questions are if no teacher gets a second supplement, then it's the claim then that they have additional help. Well, then that should be dismissed. And the alternative is to get an assistant. And that was reserved for summary judgment with a full record. Yes, Your Honor. And that's when the court ruled that receiving a . . . I understand, but I'm just focusing on what the motion dismissed, whether that was error. And it seems to me on the narrow basis, it's hard to argue that it was error to get rid of that aspect of the case. I would agree, Your Honor. And the district court listed multiple reasons for dismissing it. One goes to Judge Richardson's point about Mr. Tabb's efforts to produce high-quality productions not being a requirement of him. So, therefore, it was not an adverse action for him to do this additional work. And then, two, that he had not alleged that any technical theater teacher or that any theater teacher had ever received two supplements. I'd also like to point out to the court that the employee in the district who is most similarly situated to Mr. Tabb is actually Olivia Belido. She's the theater teacher at Jordan High School. She's been the sole theater teacher there since 2011. Like Mr. Tabb, she's never had anyone else in her theater department. Ms. Belido is a white female. Like Hillside's program, Jordan's program is also award-winning. It also sends students off to elite programs. Ms. Belido has stated in her affidavit that she often works 12 or 14 hours a day, nights and weekends, doing all the work required to fund high-quality productions and that she does this for the benefit of her students. She actually went out and became educated in technical theater work on her own accord for the benefit of her program. Over the years, she has repeatedly asked for additional staff in the department to be hired and she's been rebuffed consistently, both by senior administrators in the district and her principal. Whenever she has asked senior administrators in the district why an additional staff person could not be hired at the school, she was told that that was a school-based decision. That's the same rationale that was given to Mr. Tabb whenever he would ask to hire up from the school system. Whenever she approached her principal about hiring a technical theater teacher, she was told that the school could not afford to use one of its allotments for that purpose because it needed to focus on core academic areas and student achievement. Unlike Mr. Tabb, Ms. Belido has never been paid for extra-duty work or district-wide events that have taken place in her theater, and her principal has also never agreed to host a position for technical theater at her school. So her principal has been less supportive than Mr. Tabb's principals have been. I don't know exactly where this goes. I've never heard the defendant arguing a comparator that is worse off than that establishes the defense, but you go. I believe it undercuts Mr. Tabb's claims that there is this person in this very similar situation, and they have been given the exact same justifications that he has. Worse, worse. The principal is less supportive. That's what you just told us. Yes, Your Honor, and the justifications given to her are the same ones given to Mr. Tabb. He's argued those justifications are pretextual, and the fact that those same reasons have been given to Ms. Belido undercuts his argument that they were a pretext for race. Can I go back to the point I asked your colleague? It seems like what we've got is sort of a three-part issue, and this is sort of back to my football coach example, right? So he's definitely required to put on plays. We agree with that. And he alleges that those plays have got to be high quality. That's Judge Motz's point that maybe that's a requirement because there's a competition of sorts and he gets awards. But the piece of that that I'm curious about is the middle piece that to put on high-quality plays, you must have, like, elaborate sets and lighting and the like, which are very time-consuming. I mean, we think of lots of, I mean, some plays, you know, like Lion King, have elaborate costumes and sets, and they're really great. Other plays have no, you know, set to speak of. It's sort of one or two people on a stage, right? And so why is it that we think, or what is in the record that suggests that to produce high-quality plays, you must have elaborate sets that are time-consuming, as an example? Well, John, I think that that question is in part answered by the current arts education director of the district, Jeremy Tucker, who submitted in his affidavit that the job of theater teachers is to instruct their students according to the North Carolina essential standards. And as long as theater teachers are doing that, then they're doing their job, and they're doing a good job doing their jobs. There's no requirement they put on elaborate plays with elaborate sets. Mr. Tabb has chosen to do that to attract a larger audience to his shows, and he's gotten great recognition for doing that. So that is not a requirement for theater directors to put on such elaborate shows. And I think that the argument that this is required and that everybody does this is belied by Mr. Tabb's own arguments in this case. From the outset, he has argued that the only schools to which he can be compared are Jordan, DSA, and Riverside, because those are the programs with the quote-unquote best productions. There are other schools within the school system, Northern and Southern School of Sustainability and Energy, that have also had theater programs during this time period, and he says you can't even compare me to them because their productions are not as elaborate as mine. So if doing these elaborate productions is a requirement, then why have Northern and Southern, why are they not in that competition as well? And that goes to show that being this ambitious and doing this kind of work, again, while laudable, is a choice that Mr. Tabb has made for the benefit of his students in the school community. Is that it? Briefly, Your Honor, the other claim that I believe we have not addressed is the extra-duty pay claim. The record simply doesn't support that. All of my questions were directed. Oh, no, these are setting up the gym. Is that what you're talking about? Yes, Your Honor. It's a technical supplement claim in the extra-duty pay claim. So the extra-duty pay claim was for his allegation that he was forced to work in the theater for particular events. Extensive discovery was conducted on that. It was just simply not supported by the record. The district court in the motion to dismiss order said that Planoff was entitled to discovery on that issue. That happened, and there was just simply no evidence that any other theater teacher received pay for that kind of work. The only employee who ever received pay for that kind of work was Will Holley, who is a classified non-exempt teacher assistant at Riverside who received one contract, which is the same amount that Mr. Tabb received. So even if Mr. Holley were a valid comparator for Mr. Tabb, which he's not because he's a non-exempt employee, he was treated exactly the same based on the facts that are understood in the record. Thank you. All right, thank you, Mr. Scheib. Mr. Berg. I think Judge Motz was completely correct in understanding some of the key issues in this case. One of the biggest mistakes by the district court, and it was alluded to by Mr. Scheib here today, is that the court erroneously did two things when it came to the role of comparator. One, it determined that you can only compare individuals within the statute of limitations, which is not consistent with Fourth Circuit precedent, and it conflates the issue of pretext and comparator. If you have evidence that you have a non-discriminatory reason, that may go to the issue of whether there was a pretext or not, but it does not go to the issue of whether somebody is a valid comparator. This court has been clear that when it comes to... So first of all, what is a valid comparator? There's the issue of, again, discussing schools versus individuals. A comparator is a person by person, which means Key Strong, Mr. Clive at Jordan, not the schools. This court has said in Spencer v. Virginia State that while there's no bright-line rule as to what makes two jobs similar under Title VII, courts consider whether their employees held the same job description, were subject to the same standards, and were subordinate in the same supervisor, and had comparable experiences, education, other qualifications. In fact, the district court got it right for a brief moment in its order on the partial motion to dismiss. The court said, and this is page 80 of the joint appendix, first, plaintiff must allege the existence of a non-minority comparator. White teachers of the district schools with the same level of responsibility as plaintiff, in parentheticals, i.e., theater directors. That means that every theater director is a comparator. Why don't you address the theater director at Jordan School? That he... In reading the record, it seemed like she was a pretty fair comparator. It looks like they were doing the same job on the same course with the same frustration about not having an assistant, and she went beyond the course of duty and got performance accolades, but she didn't get paid more, and she didn't get an assistant. To that, the first thing I will say is that Title VII doesn't require that every non, in this case, non-minority individual be treated poorly as well. The comparator analysis that... She basically did her job like Mr. Tabb did his job. He's basically complaining that he was denied an assistant, and the question is, in the comparable circumstances, others were denied an assistant. The one school that did not, that did have assistants, the School for the Arts, is an art school where their whole program is designed that way, and its structure is not fairly compared to a school that has the general core curriculum. I'll disagree with you on two points, Judge Nehemiah. First, the record demonstrates in... I think it's in Ms. Olivia Valido's affidavit, which is page 1634 of the joint appendix, that there was a theater tech hired during her tenure during the 2010-2011 year. What the district court does is refuses to look at that because the district court has this notion that you can only look at comparators within the scope of the statute of limitations. So we don't look at Mr. Kline and all the support he had. We don't even look at Ms. Valido and the support that she had because... What's wrong with that analysis by the court? It seems to me that if you're making a claim that your client's being discriminated against, we have to look at the nature of the claim, and the claim can only be made in the current time 10 years ago if he was discriminated against because one person had an assistant and he didn't have an assistant. That's... That might go to intent or whatever, but it's not to do the comparator analysis. We've got to look at your current claim against comparators, right? That's incorrect, Your Honor. In this 2003 case, Bryant v. Atkins, this court held, we would never hold, for example, that an employer who categorically refused to hire black applicants would be insulated from judicial review because white applicants that had happened to apply for a position during the time frame had not happened to apply for the position during the time frame. That would make an unworkable system to say, for example, in Heshon, that only partners that were up for partnership during that time frame, the 180 days, those are the only individuals that you can look at for comparison. There's no support for it. The district court doesn't cite any case law for that and actually goes contrary. In fact, another Fourth Circuit case is an equal pay case, 1994 Brinkley, 36 F. 3rd, 336. This court said, in the context of equal pay, the statute of limitations does not dictate which co-workers a plaintiff may submit as comparators. The relevant question, as the district court pointed out, is whether during the statutory period the plaintiff was being paid less on the amount of his sex. So the case is that the comparator… When it said statutory period. During the statute of limitations. So during the four-year period, the question is, did Mr. Tabb not receive the benefit the other individuals had? The fact that they already had it previously for years and years does not mean they're not a valid comparator. They are a valid comparator because they did have the benefit and Mr. Tabb did not. So before you sit down, can I ask you this question? You have picked your comparator. Are you allowed, if there is another comparator in which your colleague on the other side has suggested that perhaps is even closer, that you do not benefit from comparison to, where does that leave us? Your Honor, I'll submit that. As you state, it is for the plaintiff to pick the comparator. No, I didn't state that. I said, are you allowed to? Yes, the plaintiff in the… Why? I mean, it seems to me there are, what, five comparators. There are five schools that are the issue here. Why are you allowed to pick one and ignore two, which might even seem to be closer? Maybe the population of the school is closer? Well, in that sense, the issue is not whether every white theater director was treated differently. That's not the standard. And so the fact that the county may, which, again, the record does not support that Ms. Belletto was not provided support because she was provided support, and the record demonstrates that. The plaintiff is not required to prove that every single non-minority employee was treated differently. And that's the issue for the jury to consider. So your answer is you can pick your comparator? That it doesn't have to be each one. You can pick some but not all. The law does not require that every non-minority comparator be treated differently. Well, you only have one, right? One comparator. It's not like some but not all. You don't say the other schools were treated differently. It's only the Durham School for the Arts that is alleged to be the comparator, right? No, Riverside, Ms. Keystrong, Durham School of the Arts, and the other schools that did not have the assistant, Southern and Northern, also had black directors. So I think that goes to our point to show discriminatory intent, not to show that there's not an issue of part and parcel. It means that every black director outside of Ms. Monique Taylor, who inherited that position from Keystrong because she was there before, that every black theater director in Durham didn't have the technical assistant. And that goes to show discrimination, not to go the opposite way. All right, thank you, Mr. Berg. We'll take a short recess and then proceed to the next case. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Julius N. Richardson